IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:20-CR-51-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DYTWAN DONNELLE CHAMBLEE | ) | |

This matter came before the court for sentencing on January 12, 2022. The court memorializes herein reasons for sustaining one of defendant's objections to the Presentence Investigation Report's ("PSR") calculation of defendant's Guidelines offense level and overruling two others.

## BACKGROUND

Indictment filed December 2, 2020, charged defendant with two counts of interference with commerce by robbery, aiding and abetting; one count of knowingly using, carrying, and discharging a firearm in furtherance of a crime of violence, aiding and abetting; and one count of knowingly using, carrying, and brandishing a firearm in furtherance of crime of violence, aiding and abetting. After trial commencing October 18, 2021, defendant was found guilty by a jury only on the count charging interference with commerce by robbery, related to offense conduct taking place on or about February 5, 2020.

Prior to sentencing, the United States Probation Office prepared the PSR, which calculated defendant's criminal history level as a VI and his total offense level as a 28, which yields an advisory guideline sentencing range of 140 to 175 months imprisonment. Pertinent here, the probation office calculated defendant's total offense level by beginning with a base offense level

of 20, determined pursuant to U.S.S.G. § 2B3.1(a).  Under the probation office's calculation, defendant received a six-level offense enhancement for "a firearm [being] otherwise used" during the robbery, pursuant to § 2B3.1(b)(2)(B), and a two-level offense enhancement for "any person [being] physically restrained to facilitate commission of the offense or to facilitate escape," pursuant to § 2B3.1(b)(4)(B).  The probation office did not calculate that defendant should receive a two-level reduction under § 3E1.1(a) for acceptance of responsibility.  The court adopted the PSR's findings and conclusions in large part, overruling defendant's objection to the six-level offense enhancement pursuant to § 2B3.1(b)(2)(B) and lack of reduction pursuant to § 3E1.1(a), but sustaining defendant's objection to the two-level offense enhancement pursuant to § 2B3.1(b)(4)(B).  With the advice of guidelines of a sentencing range of 120 to 150 months, the court sentenced defendant to 132 months imprisonment.

**COURT'S DISCUSSION**

A.     Adjusted Offense Level Calculation

Section 2B3.1 controls the guidelines advice as to 18 U.S.C. § 1951 offenses.  U.S.S.G. app. A.  It provides for a base offense level of 20 that can be elevated, inter alia, by the specific offense characteristics of "a firearm [being] otherwise used" and a "person [being] physically restrained to facilitate commission of the offense or to facilitate escape," respectively.  U.S.S.G. § 2B3.1(a), (b).

    1.     Section 2B3.1(b)(2)(B) Enhancement

Section 2B3.1 does not define "otherwise used" and, instead, makes reference to the definition in the "Commentary to §1B1.1."  Id. § 2B3.1 cmt. n.1.  The commentary to § 1B1.1 defines "[o]therwise used" as "conduct [that] did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon."  Id. §

2

1B1.1 cmt. n.1(J). The United States Court of Appeals for the Fourth Circuit has explained that "a firearm is 'otherwise used' . . . when use of the gun goes beyond brandishing and becomes actually menacing." United States v. McNeil, 539 F. App'x 190, 191 (4th Cir. 2013); see also Smith v. United States, 508 U.S. 223, 233 (1993) ("[P]istol-whipping a victim with a firearm might be 'more than' brandishing, scratching one's head is not."). For example, the McNeil court explained, quoting the United States Court of Appeals for the Sixth Circuit, that "[p]ointing a gun while telling someone what to do obviously goes beyond what now constitutes brandishing." McNeil, 539 F. App'x at 191 (quoting United States v. Bolden, 479 F.3d 455, 463 (6th Cir. 2007)); accord United States v. Gordon, 19 F.3d 1387, 1388 (11th Cir. 1994) (holding that pointing a firearm at a victim with an explicit threat is more than merely brandishing a firearm); United States v. Seavoy, 995 F.2d 1414, 1422 (7th Cir. 1993). Similarly, the court in United States v. Shull, 232 F. App'x 367 (4th Cir. 2007), held that this enhancement is justified where a defendant "displayed and pointed a pistol" at a victim. Id. at 368.

Further, "specific offense characteristics . . . shall be determined on the basis of . . . all acts . . . committed, aided, [or] abetted . . . by defendant; and in the case of jointly undertaken criminal activity[,] . . . all acts and omissions of others that were (i) within the scope of the jointly undertaken activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with criminal activity." U.S.S.G. § 1B1.3(a). The commentary explains that, for example, if

> two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim, . . . [t]he second defendant is accountable for the assault and injury to the victim . . . because the assault on the teller was within the scope and in furtherance of the jointly undertaken criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

Id. § 1B1.3 cmt. n.4(b)(2).

3

Turning to § 2B3.1(b)(2)(B)'s application to defendant, the fact that the jury did not find defendant guilty of the charge of knowingly using, carrying, and brandishing a firearm in furtherance of crime of violence committed February 5, 2020, is not dispositive of § 2B3.1(b)(2)(B)'s applicability. The court may consider "dismissed, uncharged, or acquitted conduct" at sentencing, if proved to the requisite degree. United States v. Barber, 119 F.3d 276, 283-84 (4th Cir. 1997); United States v. Grubbs, 585 F.3d 793, 799 (4th Cir. 2009) (describing the "sentencing court's ability to consider uncharged or even acquitted conduct during sentencing"); United States v. Randolph, 261 F. App'x 622, 630 (4th Cir. 2008) ("[I]t is well established that a sentencing court may consider the broad context of a defendant's conduct in determining an appropriate sentence, including conduct underlying an acquitted charge, so long as the conduct has been proved by a preponderance of the evidence.").

Here, by a preponderance of the evidence as presented at trial and sentencing, defendant was accountable for the firearm use's during the February 5 robbery and that the firearm was "otherwise used," within the meaning of § 2B3.1(b)(2)(B).

As an initial matter, the use of the firearms by co-defendant Langford and the unidentified co-conspirator during the robbery of the Cofield, North Carolina, Duck-Thru went beyond brandishing and became actually menacing. Like McNeil and Shull, the criminal co-participants, here, pointed firearms at individuals and made demands in furtherance of the robbery, which implied a clear threat to those individuals' safety if they did not comply. (PSR (DE 102) ¶ 9; Trial Tr. (DE 104) at 5-6 (testimony of Cynthia Holley, clerk at the Duck-Thru)). This conduct merits application of a six-level offense enhancement under § 2B3.1(b)(2)(B).

In addition, these acts were "within the scope of," "in furtherance of," and "reasonably foreseeable in connection with" the "jointly undertaken criminal activity" of which defendant was

4

a part, meaning his specific offense characteristics may be determined on the basis of those acts. U.S.S.G. § 1B1.3(b). On the evidence adduced at trial, primarily the testimony of Michelle Wilson, (see, e.g., Trial Tr. (DE 105) at 45-46, 67-72), and facts described in the PSR, (PSR (DE 102) ¶¶ 9, 11-13), defendant was, at least, a "getaway" driver for the February 5, 2020, armed robbery of the Duck-Thru. The "conduct of . . . defendant," namely, reconnaissance of the Duck-Thru prior to the robbery, driving the co-participants to the robbery, and then waiting out of sight until after the robbery, lead to a "fair[] inferre[nce]" of defendant's either "explicit . . . or implicit agreement" to aid in robbing the store. U.S.S.G. § 1B1.3 cmt. n.3(b). The use of the various firearms was within the scope of that robbery and in furtherance of the robbery, and defendant did not provide a basis for contesting such at hearing.

Further, firearms being otherwise used, that is, pointed at individuals to substantiate robbery demands, was reasonably foreseeable in connection to the robbery. The question, at sentencing, was not whether defendant had actual knowledge that a firearm would be otherwise used in furtherance of the robbery, but whether it was reasonably foreseeable that one would be. See United States v. Powell, 58 F. App'x 991, 994 (4th Cir. 2003) ("The sentencing court may hold a defendant accountable for reasonably foreseeable actions of another person involved with him in a jointly undertaken criminal activity without finding that the defendant had actual knowledge of the conduct."); United States v. Mensah, 759 F. App'x 183, 185 (4th Cir. 2019); accord United States v. Aslan, 644 F.3d 526, 537 (7th Cir. 2011) ("Foreseeability is not equivalent to actual knowledge."). Instead, defendant is in the same position as the hypothetical "Defendant C" described in the commentary to § 1B1.3's armed bank robbery example. See id. § 1B1.3 cmt. n.4(B)(i).

5

In particular, defendant was "a getaway driver in an armed robbery" during which victims were threatened with violence to further the robbery, the jointly undertaken criminal activity. Id. "[G]iven the nature of the offense," this violent conduct "was reasonably foreseeable in connection with that criminal activity." Id.; id. § 1B1.3 cmt. n.(D); United States v. Palacios, 810 F. App'x 747, 756 (11th Cir. 2020) ("The reasoning of that application note confirms that violent or 'assaultive' conduct[, including brandishing a dangerous weapon,] that occurs during a robbery is a foreseeable part of robbery."). The guidance of the commentary is in accord with that of this circuit, which has explained that "[i]n determining whether an act or omission was reasonably foreseeable for purposes of the relevant conduct provisions, [courts] consider both the nature of the offense and the circumstances of the case." United States v. Springer, 790 F. App'x 498, 500 (4th Cir. 2019).

Most "robberies carry with them the inherent prospect that someone could be injured," United States v. Patton, 927 F.3d 1087, 1095–96 (10th Cir. 2019), or that a weapon will need to be used and violence threatened, United States v. Patton, 14 F. App'x 450, 454 (6th Cir. 2001) (describing the "inherently violent nature of an armed robbery offense"). Both are especially true where the robbery is to take place "during business hours when multiple employees" or other individuals will be present. United States v. Benson, 957 F.3d 218, 238-39 (4th Cir. 2020) (considering 18 U.S.C. § 924(c) criminal liability and explaining that "[t]he plan involved robbery during business hours when multiple employees were present (thereby necessitating a firearm)." (emphasis added)); see United States v. Moore, 843 F. App'x 498, 502 (4th Cir. 2021) (considering 18 U.S.C. § 924(c) criminal liability and explaining that "[t]he robberies occurred during normal business hours, when [defendant] would have known that employees and potential customers would be in the store, thereby necessitating the need for a firearm to restrain the victims while

6

another obtained the Rolex watches." (emphasis added)).  A firearm, rather than a different type of weapon, is reasonably foreseeable in these circumstances where it "promise[s] efficiency," enables "a struggle . . . to be avoided," and mitigates the "risk that bystanders might try to interfere."  United States v. Acevedo, 824 F.3d 179, 185 (1st Cir. 2016) (considering the foreseeability of a firearm in regard to kidnapping offense conduct).

Moreover, defendant's criminal history includes a number of armed robberies with firearms, (PSR (DE 102) ¶¶ 23, 26), which further indicates that a firearm's use during this armed robbery were reasonably foreseeable to defendant.  See United States v. Dixon, 982 F.2d 116, 120 (3d Cir. 1992) ("Considering [defendant's] experience with offenses of this nature, as shown by his criminal history enhancement, and the characteristics of a robbery by force, in the old style, vi et armis, lead us to the conclusion that [a co-participant's brandishing of a firearm] was attributable to defendant as a matter of law.").  The court further infers defendant's actual and "advance knowledge of a firearm from his direct participation in the robberies" since "[a]s the getaway driver, [defendant] was in close proximity to his armed accomplice moments before [they] entered the . . . store[] and moments after the commission of the robber[y]." Moore, 843 F. App'x at 502. Finally, the court draws an inference as to defendant's knowledge of a firearm and ability to reasonably foresee its use from his failure to "withdraw" from the criminal activity "after a gun was displayed or used by a confederate." Cf. Rosemond v. United States, 572 U.S. 65, 78 & n.9 (2014) (considering 18 U.S.C. § 924(c) aider/abettor liability); see, e.g., United States v. Muhammad, 948 F.2d 1449, 1456 (6th Cir. 1991) ("As the crime of . . . robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight.").

7

In sum, the nature of the offense and the particular circumstances of this case are sufficient for the court to conclude that defendant was accountable under § 1B1.3 for his confederates otherwise using a firearm during the robbery, meriting a six-point enhancement under § 2B3.1(b)(2)(B). Accordingly, the court overruled defendant's objection to this enhancement.

2. Section 2B3.1(b)(4)(B) Enhancement

A two-level enhancement applies "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). According to the commentary to the guidelines, a physical restraint enhancement applies most clearly when a victim is "tied, bound, or locked up," U.S.S.G. § 1B1.1 cmt. n.1(L), even though these examples are not exclusive. United States v. Mikalajunas, 936 F.2d 153, 156 (4th Cir. 1991).

Here, consistent with the court's ruling at co-defendant Langford's sentencing, (Sent'g Tr. (DE 67) at 20-21), the court determines that a physical restraint enhancement is not warranted based upon the facts and circumstances of this case. The government's attempt to distinguish the two cases, relying on the discharge of a firearm in co-defendant Langford's case, is unavailing. Accordingly, the court sustained defendant's objection to this enhancement.

B. Acceptance of Responsibility

Defendant also objected at sentencing to not being given a two-point reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The court overruled this objection for the following reasons.

Section 3E1.1(a) guides that the court should "decrease the offense level by 2 levels" "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The relevant question is whether defendant "clearly recognize[s] and affirmatively accept[s] personal responsibility for his criminal conduct." United States v. Carver, 916 F.3d 398,

404 (4th Cir. 2019) (emphasis added). Defendant "as the party seeking application of Guideline § 3E1.1, ha[s] the burden of persuading the court that he was entitled to it" by a "preponderance of the evidence." United States v. Harris, 882 F.2d 902, 906-07 (4th Cir. 1989). "In determining whether a defendant has satisfied this standard a sentencing court may consider . . . (a) truthful admissions to the underlying offenses or related conduct; (b) voluntary withdrawal from crime; (c) voluntary and prompt surrender to authorities; and (d) the timeliness of the defendant's apparent acceptance of responsibility." United States v. Bolton, 858 F.3d 905, 915 (4th Cir. 2017). The court "is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.5.

Further, in the context of a defendant is before the sentencing court upon a verdict of guilty, a "[c]onviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction." Id. § 3E1.1 cmt. n.2. However, the reduction is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Id.

While asserting remorse for the first time at sentencing for driving his coparticipants, ostensibly unknowingly, to and from an armed robbery, the court did not find this to be a sincere acceptance of responsibility for the criminal conduct for which defendant was found guilty. Further, the untimely nature of defendant's purported acceptance also weighed against § 3E1.1(a)'s applicability. The court thus concluded that defendant had not met his burden of showing he was entitled to § 3E1.1(a)'s two-point reduction and, for that reason, overruled his objection.

## CONCLUSION

For the reasons stated herein, the court sustained defendant's objection to the two-level § 2B3.1(b)(4)(B) enhancement, overruled defendant's objection to the six-level § 2B3.1(b)(2)(B) enhancement, and overruled defendant's objection to omission of a two-level reduction under § 3E1.1(a).

SO ORDERED, this the 13th day of January, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge